IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

HASTEN C. TAYLOR,                )
                                 )
    Plaintiff,                   )
                                 )
v.                               )   CIVIL ACTION 20-0533-WS-N
                                 )
STATE OF ALABAMA DEPARTMENT      )
OF VETERANS AFFAIRS,             )
                                 )
    Defendant.                   )

**ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment (doc. 28). The Motion has been briefed and is now ripe.

**I.    Relevant Background.**[1]

Plaintiff, Hasten C. Taylor, brought this action against her former employer, State of Alabama Department of Veterans Affairs ("ADVA"), alleging violation of federal employment discrimination laws. In particular, Taylor asserts a claim for sexually hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended (Count One), and a claim for retaliation, also in violation of Title VII (Count Two).

---

[1] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016) ("It is not this Court's function to weigh the facts and decide the truth of the matter at summary judgment …. Instead, where there are varying accounts of what happened, the proper standard requires us to adopt the account most favorable to the non-movants.") (citations and internal quotation marks omitted). Accordingly, the record will be viewed in the light most favorable to plaintiff, with all justifiable inferences drawn in her favor. Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] Plaintiff's version of the facts drawing all justifiable inferences in [her] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

### A. Plaintiff's Ongoing Dispute with a Coworker.

At all times relevant to this action, Taylor worked for the ADVA as an Assistant Veterans Service Officer ("AVSO") in a small office staffed by approximately five employees. (Doc. 28-18, PageID.208.) Defendant's records reflect that Taylor was a capable and effective employee; indeed, the ADVA praised her "continued commitment to the ADVA and [her] willingness to assume additional duties while providing the most professional and compassionate assistance possible to our deserving veterans." (Doc. 31-12, PageID.271.)

Defendant had no concerns with the quality of her work; rather, Taylor's dispute with the ADVA arises from her pattern of antagonistic interactions with her colleagues, including non-party Latashia Love. As of October 2018, Love was a former employee of the ADVA who visited the office on occasion to say hello to her former coworkers. During one of these visits, in approximately September or October 2018, Love abruptly "slapped [Taylor] on [her] buttocks." (Doc. 31-1, PageID.253.) As Taylor describes the conduct, "it was a slap to where I felt the impact, I heard the impact, and I felt her fingers, I felt her hand on my rear end." (*Id.*, PageID.254.) Taylor responded, "don't touch me," and walked back to her office. (*Id.*) That same day, Taylor reported the incident to her supervisor, Lynda Jenkins. (*Id.*, PageID.255.) Jenkins informed Taylor that "there's nothing [Jenkins] could do because [Love] didn't work there." (*Id.*)

On November 1, 2018, the ADVA rehired Love into an AVSO position in the Mobile, Alabama office, reporting directly to Jenkins. (Doc. 28-14, PageID.202.) On November 16, 2018, Love engaged in a second incident of unwelcome physical contact by touching Taylor's thigh. (Doc. 31-1, PageID.256; doc. 28-15, PageID.204.) In a subsequent written account of the incident, Taylor reported, "Ms. Love inquired if I was wearing jeans and before I could answer, she touched my thigh. I responded verbally and told her not to touch me. From that point on, Ms. Love has been harassing me." (Doc. 28-15, PageID.204.) Taylor indicated that ever since that episode, Love's pattern of "harassment includes her documenting my break times and making other false allegations," in an apparent effort to cause Taylor to face disciplinary action and/or lose her job. (*Id.*)

Taylor submitted a written complaint of Love's alleged harassment to their supervisor, Lynda Jenkins, via email dated December 3, 2018. (Doc. 28-15, PageID.203.) The timing of Love's complaint was closely related to a staff meeting that Jenkins had conducted on the

previous Friday, November 30, 2018.  Jenkins called the staff meeting because "Ms. Taylor and Ms. Love was going back and forth on their complaints on each other.  Everyone else in the office was getting involved and that's why I had the meeting, telling them that they needed to get everything together."  (Doc. 28-12, PageID.187.)  The upshot of the November 30 meeting was that Jenkins cautioned all employees in the Mobile office "that if they didn't get their stuff together, I was going to get rid of every one of them."  (*Id.*, PageID.186.)[2]  According to Jenkins, the types of complaints that Taylor and Love were articulating about each other concerned petty, inconsequential "tit for tat" sorts of issues, such as reporting each other for coming in late, taking too long for lunch, exceeding allotted breaks, and so on.  (*Id.*, PageID.188.)

      Upon receipt of Taylor's emailed complaint on December 3, Jenkins did not initiate an investigation and did not discuss the matter directly with Taylor.  When Taylor asked if she could see Kent Davis, who was the Commissioner of the ADVA, Jenkins responded affirmatively.  (*Id.*, PageID.189.)  That said, Jenkins promptly met with and counseled Love about the incident.  (*Id.*)  That same day, Jenkins issued a sharply worded "Letter of Warning" to Love, which stated in part as follows:

> "It was brought to my attention that on November 16, 2018 you previously conducted yourself in a manner that was inconsistent with generally recognized professional conduct.  Specifically you inappropriately touched Ms Hasten Taylor on her thigh and that from that point on you have been harassing her.
>
>     \*                        \*                        \*
>
> "… This inappropriate action not only reflected poorly on you, but the entire department.  Such behavior is unacceptable and conflicts with all departmental guidance.
>
>     \*                        \*                        \*
>
> "You have been warned of this matter and placed on notice that this type unprofessional behavior cannot be tolerated and that any future occurrences may result in further administrative action in accordance with department policies and procedures."

---

[2] In a "Memorandum for record" dated December 3, 2018, Jenkins described the November 30 meeting as including an episode in which "things became heated between Ms. Love and Ms. Taylor.  I told them that if they could not address each other in a civil manner, I would escort them both from the building and they would not be allowed to return.  I also told the group that … if they could not come back acting like professional adults in the workplace, that I would gladly accept their resignation."  (Doc. 28-25, PageID.221.)

(Doc. 28-16, PageID.205.)  Love received and signed a copy of the letter.  Following the December 3, 2018 disciplinary action by the ADVA, Love never again touched Taylor or made any physical contact with her that might have been construed as sexual harassment.

### B. Defendant's Investigation of Plaintiff's Continuing Complaints.

Unfortunately, the working relationship between Taylor and Love did not improve in the wake of the December 3, 2018 warning.  The summary judgment record reveals evidence of continued bickering between them during the first quarter of 2019.  (Doc. 31-19, doc. 31-20.)  On April 5, 2019, Taylor sent an email to Jenkins, complaining that "Ms. Love continues to harass me," and citing as evidence an incident that day in which Love purportedly took an excessive lunch break and did not see her fair share of clients.  (Doc. 31-20, PageID.378.)  Jenkins responded that Taylor was "the first to mention this today," and advised Taylor to contact Commissioner Davis directly if she wished to speak with him about the matter.  (Doc. 31-21, PageID.386.)  On April 1, 2019, Jenkins passed along word to the Commissioner's office that Taylor would be calling to file a complaint.  Jenkins explained to the Commissioner that Taylor and Love were "having conflict – which I think is based on personality.  … When [Taylor] came to talk to me, she stated that she did not think I would take any action and wanted to go straight to the Commissioner.  I told her that I did not have a problem with that and dismissed her, so I did not try to delve into the situation."  (Doc. 31-21, PageID.379.)

Taylor did in fact lodge a complaint about Love with Commissioner Davis in early April 2019.  On April 9, 2019, Commissioner Davis appointed Rogers Wilson to investigate Taylor's allegations, including her complaints that Love had engaged in "inappropriate touching and repeated harassment" and her complaints that Jenkins "has allegedly not taken adequate action to address the complaints."  (Doc. 28-17, PageID.206.)  Wilson proceeded to conduct a weeklong investigation, followed by a written Investigation Report dated April 17, 2019.  As part and parcel of his investigation, Wilson interviewed Taylor, Love, Jenkins, and several other ADVA employees in the Mobile office and elsewhere.  (Doc. 28-18, PageID.208.)  In her interview with Wilson, Taylor cited the two incidents of inappropriate touching by Love, as well as a series of harassing comments described as follows:

> "Since the second incident when I told [Love] to stop touching me, she continues to say hateful, demeaning and demoralizing things to me and about me to others in the office. … [O]nce I wrote [Love]'s name down to see a client and she complained to … Jenkins, and [Jenkins] told me don't do it.  On another occasion,

> [Love] told me my break was over and I told her it wasn't. … I feel like anytime I tell [Jenkins] anything she is frustrated with me.
>
>    *      *      *
>
> "On one occasion, [Love] told me she was not going to see a veteran because she was not going to clean up my mess. On another occasion, [Love] told a male veteran … that I was as dumb as a doorknob."

(Doc. 31-13, PageID.279, ¶¶ 14-15.) Meanwhile, Love indicated to Wilson that "[t]he working conditions are terrible" and "cut throat. … I don't know why Ms. Taylor doesn't like me." (*Id.*, PageID.281, ¶ 2.) For her part, Jenkins informed Wilson during the investigation, "I do not believe the allegations against Ms. Taylor really happened. I do not believe there was any sexual assault intended." (*Id.*, PageID.282, ¶ 4.) According to Jenkins, "Taylor has a problem with everyone she works with in the office, it usually last[s] two or three months and then she moves on to someone else in the office." (*Id.*, ¶ 6.)

At the conclusion of his investigation, Wilson summarized his findings and conclusions concerning Taylor's allegations of sexual harassment as follows:

> "Taylor's allegations of sexual assault are suspect at best. There is no evidence to support the fact that AVSO Latashia Love deliberately and intentionally touched AVSO Taylor with sexual intentions. The allegations made against AVSO Love for repeated verbal harassment again is not supported by any evidence. The entire office staff is engaged in unprofessional behavior that could be considered a hostile work environment."

(Doc. 28-18, PageID.210.) On that basis, Wilson recommended "that the entire office receive training … on sexual harassment prevention, professional conduct and acceptable behavior in the work place, and other courses offered on professional development." (*Id.*) Jenkins testified that no such training took place in the aftermath of Wilson's investigation. (Doc. 31-16, PageID.367.)

On April 17, 2019, the same day what Wilson issued his Investigation Report, Jenkins called Taylor into her office and issued her a Letter of Reprimand. On its face, the Letter of Reprimand purported to be rooted not in Taylor's complaints that spawned the investigation, but rather in an episode that occurred on the very date of the reprimand. In particular, the Letter of Reprimand authored by Jenkins described the incident involving Taylor as follows:

> "On 4/17/2019, I called you into my office to discuss a message from the Mobile Outpatient Clinic stating they had sent over a 100-year-old veteran to turn in some paperwork for aid and assistance. The veteran came into the office with his daughter. The daughter stated that [you] would not assist the veteran because he

>has DAV as his representative.  While discussing the issue with you, ***you became insolent and insubordinate towards me your immediate supervisor***."

(Doc. 31-25, PageID.406 (emphasis added).)  The April 17 letter concluded that "[f]ailure to provide immediate and sustained improvement may result in further disciplinary action up to and including termination."  (*Id.*, PageID.407.)  For her part, Taylor submitted a written rebuttal to the Letter of Reprimand in which she complained, "There has been numerous occasions that Lynda Jenkins has been disrespectful to myself.  … Not only has Lynda been disrespectful to me, but … it was not until I advised her that I will be filing a formal complaint that she begun to write me up.  It is my opinion that [the] only reason that she will [be] writing me up now, is a retaliation to my filing a formal complaint on her."  (Doc. 31-26, PageID.408.)

   C. *Plaintiff's Resignation in Lieu of Termination.*

  The summary judgment record is largely silent as to the events of the next three months.  No specific issues or incidents involving Taylor are documented or described by any witness.  On July 23, 2019, however, Jenkins prepared a "Memorandum for record" in which she stated that she had met with Commissioner Davis and Assistant Commissioner Mike Northcutt on July 18 "in reference to terminating the employment of … Taylor and … Love.  I explained that the conflict between the two of them was tit for tat and that it was not getting better.  I [told] them that I wanted to terminate both employees, and they stated they would support whatever decision I came up with."  (Doc. 31-29, PageID.415.)

  On July 23, 2019, Jenkins met with Taylor and informed her that she was recommending that Taylor's employment be terminated.  As grounds for this decision, Jenkins indicated to Taylor that "it seem[ed] to be tit for tat between her and Ms. Love even though she did not do it intentionally.  I told her that … she has a problem getting along with others that it was impacting the office. … I told her that the environment … was toxic and I needed to start cleaning it."  (Doc. 31-30, PageID.416.)  Based on this meeting, Taylor elected to resign in lieu of being fired from her position at the ADVA.  (Doc. 28-20, PageID.212.)  On the same day, Taylor met with Love and offered her the option of allowing her to resign or being fired.  Love declined to resign.  (Doc. 28-12, PageID.199.)  Accordingly, on July 23 Taylor submitted a written recommendation to Commissioner Davis that Love's employment be terminated because "Ms. Love has been in conflict with other employees in the office and several have voiced their concerns about her poor attitude and lack of work ethics ….  Despite repeated feedback and coaching, no improvements have been noted."  (Doc. 28-21, PageID.213.)  The following day, Commissioner Davis sent a

letter to Love terminating her employment at the ADVA effective immediately.  (Doc. 28-22, PageID.214.)  After Taylor exhausted her administrative remedies at the Equal Employment Opportunity Commission, this litigation followed.

**II.     Summary Judgment Standard.**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).  "We recognize that claims of employment discrimination, including sexual-harassment claims, present fact-intensive issues.  However, … motions for summary judgment or judgment as a matter of law are appropriate to police the baseline for hostile environment claims."  *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999) (citation and internal quotation marks omitted).

**III.    Analysis.**

   **A.     *Hostile Work Environment Claim (Count One).***

In Count One of her Complaint, Taylor asserts a claim of sexual harassment in violation of Title VII.  Plaintiff's theory, as pleaded, is that "Defendant discriminated against the Plaintiff in terms, conditions, and privileges of employment, as she was exposed to a hostile work environment based on sex."  (Doc. 1, PageID.7, ¶ 42.)  Taylor further alleges that the ADVA

"ratified the hostile work environment [in that] the district manager ignor[ed] the complaints of the Plaintiff … [and] ignor[ed] the results of the internal investigation." (*Id.*, PageID.8, ¶ 49.)

Under well-settled Eleventh Circuit precedent, "[s]ubstantive hostile work environment claims … require plaintiffs to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Tonkyro v. Secretary, Dep't of Veterans Affairs*, 995 F.3d 828, 836-37 (11th Cir. 2021) (citations and internal quotation marks omitted). "That intimidation, ridicule, and insult must also bear the necessary sexual or other gender-related connotations to be actionable sex discrimination." *Id.* at 837 (citation and internal quotation marks omitted). That is to say, "a plaintiff must show that the actions were based on her sex rather than some other unprotected characteristic." *Id.* (citations omitted); *see also Comerinsky v. Augusta Coating and Mfg, LLC*, 418 F. Supp.3d 1252, 1259-60 (S.D. Ga. 2019) (for viable Title VII sexual harassment claim to exist, "there must be some factual basis to show the alleged harassment was based on the employee's protected characteristic, such as gender"); *Xueyan Zhou v. Intergraph Corp.*, 353 F. Supp.3d 1220, 1231 (N.D. Ala. 2019) (in determining whether plaintiff has been subjected to "severe or pervasive" harassment, "the court can only consider instances of harassment that were based on sex"). In making that determination, "we are guided by the common-sense rule that the context of offending words or conduct is essential to the Title VII analysis." *Tonkyro*, 995 F.3d at 838 (citation and internal quotation marks omitted).

In moving for summary judgment on Count One, defendant persuasively argues that Taylor's claim fails as a matter of law for lack of evidence that any of the purported harassment was based on her gender or any other protected characteristic. The day-to-day bickering and petty criticism that Taylor complains about being subjected to by Love has no perceptible link to Taylor's gender. On this record, no reasonable finder of fact could conclude that Love's ongoing nitpicking of Taylor for taking excessive breaks or her alleged characterization of Taylor to a client as being "dumb" had anything to do with Taylor's sex. To be sure, Taylor may well have viewed Love's pattern of conduct toward her as being both harassing and hostile, and the record supports a reasonable inference that it was. But "Title VII does not prohibit … harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including ***harassment that discriminates based on a protected category such as sex***." *Tonkyro*, 995 F.3d

at 837 (citing *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301-02 (11th Cir. 2007) (emphasis added). The summary judgment record viewed in the light most favorable to Taylor does not support a reasonable inference that any harassment to which Love subjected Taylor was based on a protected category such as sex.

Insofar as Taylor would rely on evidence that Love smacked her buttocks on one occasion and touched her thigh on another, those facts cannot support a finding of a sexually hostile work environment under the circumstances presented here. As an initial matter, the law is clear that not every physical touching of one employee by a co-worker constitutes actionable sexual harassment under Title VII. *See, e.g., Tonkyro*, 995 F.3d at 839 (finding that district court properly granted summary judgment for defendant on plaintiff's sex-based hostile work environment claim where alleged conduct of female plaintiff's female co-worker – including pulling up her shirt, chest bumping, hugging and kissing her on the cheek – was insufficiently severe or pervasive); *Mendoza*, 195 F.3d at 1248 (determining that plaintiff's allegations, including instance in which harasser rubbed hip against plaintiff's hip while touching plaintiff's shoulder and multiple instances in which harasser made a sniffing sound while looking at plaintiff's groin area "falls well short of the level of either severe or pervasive conduct" required under Title VII); *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 585 (11th Cir. 2000) (no hostile environment where supervisor placed hand on plaintiff's knee once and touched the hem of her dress once); *Dar Dar v. Associated Outdoor Club, Inc.*, 248 Fed.Appx. 82, 86 (11th Cir. Sept. 7, 2007) (finding that two instances of employees touching plaintiff's buttocks did not establish a hostile work environment). Nothing in the record supports the conclusion that Love's two isolated touchings of Taylor had anything to do with Taylor's sex. Even if it did, the Court finds that comparing Love's conduct as identified by Taylor to conduct found sufficient or insufficient to constitute a sexually hostile work environment by the Eleventh Circuit in previous caaes mandates a conclusion that Taylor's allegations, taken in their totality and in context, fall well short of the severity required in this Circuit to establish a Title VII sexual harassment claim. "In sum, [Love]'s conduct is of an entirely different nature from the sexually predatory conduct at issue in … *Mendoza*. Such conduct is insufficiently severe or pervasive to alter the terms and conditions of [Taylor]'s employment." *Tonkyro*, 995 F.3d at 839.

In arguing against the summary judgment motion, Taylor frames Love's conduct as "sexual assault" and "advances," and insists that she "would not have reported these to her

supervisor if they were not sexual harassment." (Doc. 31, PageID.234.) Of course, plaintiff's subjective impressions are not dispositive for Title VII purposes. And the notion that Love's touching of Taylor amounted to "sexual assault" is factually unfounded, given plaintiff's own description of the touchings as including a single time when Love "reached out and popped her on the behind" and another time when Love "reached out to touch the material on her clothing to see if it was jeans." (*Id.*) This is not sexual assault. This is not touching based on sex. And this is not severe or pervasive harassment based on sex. No reasonable finder of fact could conclude otherwise without running afoul of binding precedent.

Equally unavailing is plaintiff's reliance on other ADVA employees' characterizations of the subject conduct as constituting sexual harassment or a hostile work environment or a violation of the ADVA's sexual harassment policy. Indeed, Taylor insists that the existence of sexual harassment is undisputed here because (a) defendant's investigator (Wilson) recommended that the entire office receive sexual harassment training; (b) a co-worker of Taylor told Wilson that she "witnessed sexual assault" when Love touched Taylor's leg; (c) Jenkins opined in her deposition that she would consider Love's touching of Taylor to be sexual harassment under the ADVA's policy; and (d) investigator Wilson found what he deemed to be evidence of a hostile work environment in the Mobile office. (Doc. 31, PageID.234-37.) However, whether defendant's agents or employees described Love's conduct as sexual harassment giving rise to a hostile work environment in violation of defendant's policies is irrelevant. For purposes of Count One, what matters is whether the alleged conduct could reasonably be determined to satisfy the legal definition of a "hostile work environment" under Title VII and binding precedent. The Court concludes that it cannot; therefore, defendant is entitled to entry of judgment as a matter of law on the sexually hostile work environment claim articulated by Taylor in Count One of the Complaint.

> **B.    *Retaliation Claim (Count Two).***

Recall that in Count Two of the Complaint, Taylor brings a claim against the ADVA for retaliation in violation of Title VII. Plaintiff's theory is that the ADVA retaliated against her for "objecting to and reporting acts of sexual harassment and continued harassment." (Doc. 1, PageID.9, ¶ 54.) To establish a *prima facie* case of retaliation under Title VII, Taylor must "show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the

adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). The Court assumes – without deciding – that Taylor can meet the elements of *prima facie* case of Title VII retaliation.[3]

Where, as here, a plaintiff's Title VII claim is based on circumstantial evidence, the *McDonnell Douglas* burden-shifting analysis applies. Under that framework, once a plaintiff has made a *prima facie* showing of retaliation, "[t]he burden then shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse action." *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021). "Assuming the employer's burden is met, the burden shifts back to the plaintiff to establish that the reason offered by the [employer] was not the real basis for the decision, but a pretext for retaliation." *Id.* (citation and internal quotation marks omitted). Defendant has satisfied its intermediate burden of articulating legitimate nonretaliatory reasons for the challenged actions. With respect to the letter of reprimand, defendant's position and evidence are that it was motivated solely by an incident in which Taylor was insolent and insubordinate to her direct supervisor, Lynda Jenkins, when the latter was talking to her about an incident involving a 100-year old veteran and his daughter. As for the forced resignation of Taylor, defendant maintains that it had a legitimate nonretaliatory reason for that action as well, inasmuch as "Plaintiff and Love could not work with each other" but instead "[t]he bickering continued back and forth, back and forth," until the ADVA ultimately decided that both employees should be discharged if they did not agree to resign. (Doc. 28, PageID.146.)

Thus, in order to withstand summary judgment on Count Two, plaintiff must make a showing that the proffered reasons by defendant were pretext for unlawful retaliation. Plaintiff has not done so. As to the letter of reprimand, Taylor comes forward with neither evidence nor argument that might support a reasonable inference of pretext. She does not suggest that the incident involving insolence and insubordination did not happen, or even that Jenkins could not reasonably have deemed Taylor's conduct in that incident to warrant disciplinary action. She offers no alternative take on the factual underpinnings of the letter of reprimand, but simply

---

[3] Such an assumption is reasonable and appropriate here. After all, plaintiff's evidence is that she complained directly of sexual harassment, that she received a written letter of reprimand and was forced to resign in lieu of being discharged, and that the written reprimand was issued on the same day that the ADVA concluded its investigation into her complaint.

quotes Jenkins' deposition testimony that, "it was just odd that [Taylor] just decided to test me when were just doing a general counseling. This veteran comes in; regardless of who it is, we need to treat him … with respect. We need to assist everyone. And it turned into some blow[] out. Something that it never should've gotten to." (Doc. 31, PageID.241.) This testimony serves to reinforce, rather than undermine, the legitimacy of defendant's stated reasons for issuing the letter of reprimand to Taylor. Moreover, the incident in question was witnessed by another ADVA employee, James Odom, who submitted a written statement stating that he viewed Taylor's "tone and approach" to be "both inappropriate and disrespectful" towards Jenkins, and that he had "advised Ms Taylor she was in the wrong and should apologize to" Jenkins. (Doc. 32-1, PageID.432.) On this record, there is no basis for concluding that the employer's stated reason for reprimanding Taylor was pretextual.

As for the termination, again defendant's evidence is that Taylor and Love did not get along in the workplace over an extended period of time, despite having been counseled and warned that they could lose their jobs if they continued in that fashion. Defendant's April 2019 investigation revealed abundant evidence of ongoing hostilities between Taylor and Love in the workplace dating back to November 2018. Defendant's investigator concluded in April 2019 that "[t]he entire office staff is engaged in unprofessional behavior." (Doc. 31-13, PageID.275.) According to defendant, Jenkins continued to observe Love and Taylor interacting unprofessionally, in that "the conflict between the two of them was tit for tat and … it was not getting any better." (Doc. 28-19, PageID.211.) Finally, in July 2019, Jenkins had enough and, in conjunction with ADVA management, determined that both Taylor and Love would be terminated if they did not resign in lieu of termination. Taylor chose to resign, and Love was discharged when she declined to do so. In communicating the decision to Taylor, Jenkins explained that "the environment was toxic" and outlined for her the pattern of such toxicity infecting Taylor's interactions with multiple other employees, not limited to Love. (Doc. 31-30, PageID.416.) In short, Jenkins explained the decision as being made because Taylor "has a problem getting along with others and that it was impacting the office." (*Id.*) Faced with this evidence and explanation, plaintiff comes forward with no factual or legal basis for concluding

that the stated reasons for this personnel action were a pretext for unlawful retaliation.[4] Accordingly, summary judgment is properly entered in defendant's favor on Count Two. On this record, no reasonable finder of fact could determine that the adverse actions about which Taylor complains were motivated by retaliation for protected activity, in violation of Title VII.

## IV. Conclusion.

For all of the foregoing reasons, defendant's Motion for Summary Judgment (doc. 28) is **GRANTED** because there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law on all claims asserted by plaintiff. This action is **DISMISSED WITH PREJUDICE**. A separate Judgment will be entered.

DONE and ORDERED this 19th day of November, 2021.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[4] At best, plaintiff argues that defendant's explanation is pretextual because the "bickering" in question consisted of "Taylor complaining about being physically assaulted … and being subject to a hostile work environment." (Doc. 31, PageID.242.) In making this argument, plaintiff makes unwarranted leaps of logic that are not supported by the record. There is no factual basis that the Court can discern for equating "bickering" between employees with protected activity under Title VII. Again, defendant has shown that it reasonably concluded Taylor to be contributing to a toxic environment in the workplace because of her pattern of not getting along with her colleagues, including but not limited to Love. That showing is a far cry from plaintiff's characterization that Taylor did nothing other than object to a sexually hostile work environment. On this record, no reasonable finder of fact could conclude that Taylor's actions were limited to protected activity or that the ADVA did not reasonably believe she was negatively impacting the office through her longstanding inability or unwillingness to get along with others. Of course, "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999).